**In re PETERSON DISTRIBUTING, INC., Debtor.**

**Harriet E. STYLER, Trustee, Plaintiff,**

v.

**CONOCO, INC., a Delaware Corporation, Defendant.**

**Harriet E. STYLER, Trustee, Plaintiff,**

v.

**PENNZOIL PRODUCTS COMPANY, a Nevada Corporation, Defendant.**

**Harriet E. STYLER, Trustee, Plaintiff,**

v.

**JARDINE PETROLEUM CO., a Utah Corporation, Defendant.**

Bankruptcy No. 91–24224.
Adv. Nos. 94PB–2329, 94PB–2343 and 94PB–2346.

United States Bankruptcy Court,
D. Utah,
Central Division.

Jan. 3, 1995.

Steven G. Loosle, Kruse, Landa & Maycock, Salt Lake City, UT, for Harriet E. Styler, Trustee, plaintiff.

Jerome Romero, Jones, Waldo, Holbrook & McDonough, Salt Lake City, UT, for Conoco, Inc., defendant.

Steven T. Waterman, Ray, Quinney & Nebeker, Salt Lake City, UT, for Pennzoil Products Co., defendant.

Steven W. Call, Ray, Quinney & Nebeker, Salt Lake City, UT, for Jardine Petroleum Co., defendant.

## MEMORANDUM DECISION AND ORDER

JUDITH A. BOULDEN, Bankruptcy Judge.

Pending before the Court are motions to dismiss three of the many adversary proceedings filed pursuant to 11 U.S.C. § 547[1] by the chapter 7 trustee in this converted case. Resolution of the legal issue raised by the motions to dismiss that assert these proceedings are filed out of time, hinges upon the interpretation of § 546(a). In this factual variation, the issue is as follows: when does the statute of limitations provided in § 546(a) begin to run in a case originally filed as a chapter 11, but subsequently converted to a chapter 7, when the chapter 7 trustee is the first trustee appointed under one of the sections specified in § 546(a)(1)? This Court

---

1. Future references are to Title 11 of the United States Code unless otherwise noted.

concludes that where no chapter 11 trustee is appointed pursuant to § 1104(a), and no chapter 7 trustee is elected pursuant to § 702(b), the applicable date is that upon which the permanent chapter 7 trustee begins to serve pursuant to § 702(d). As a result, the motions to dismiss these adversary proceedings as time barred are denied.

## HISTORY

■ The history of this case common to all three adversary proceedings is not in dispute.[2] Peterson Distributing, Inc. (Peterson), a wholesale and retail supplier of petroleum products, filed a voluntary chapter 11 petition on June 28, 1991. Nearly a year later, after Peterson had failed to progress toward confirmation of a plan of reorganization, the United States trustee moved to convert the case to one under chapter 7. Peterson remained a debtor in possession during the year-long chapter 11 proceeding and no trustee was appointed pursuant to § 1104(a).

At a hearing held July 14, 1992, the Court granted the United States trustee's motion to convert Peterson's chapter 11 to a chapter 7. An order was executed and entered on July 22, 1992. Between the date of the hearing on conversion and the entry of the conversion order, administration of Peterson's many assets was essential. Therefore, an administrative Notice of Appointment of Interim Trustee issued from the United States trustee's office dated July 16, 1992, as authorized by § 701(a)(1). It designated Harriet E. Styler (Styler) to serve as interim trustee.[3] The United States trustee's Notice of Appointment of Interim Trustee is not a document filed nor docketed with the Court.

Styler immediately qualified and filed an application under § 327 for appointment of counsel to represent her to pursue, among other things, avoidance actions. The Court granted the application by order entered July 26, 1992. A § 341 meeting of creditors was held on August 17, 1992. No trustee was elected under the provisions of §§ 702(b) and (c). Since no trustee was elected and she had qualified under § 322, on August 17, 1992, Styler became the permanent trustee pursuant to § 702(d),[4] and her position as

---

2. Fed.R.Civ.P. 12(b) limits the facts to be considered by the Court to those set forth in the complaints. The parties, however, argued certain additional facts not contained in the complaints, such as the dates of the trustee's interim appointment and the appointment of her counsel. Therefore the Court is required to treat the motions to dismiss as motions for summary judgment. The Court deems, however, that all parties have been provided reasonable opportunity to present all pertinent material and that the facts and issues have been fully briefed. There are no genuine issues as to any material fact, no inferences need be drawn from the facts, and the only issues are matters of law. The Court may therefore proceed as though these motions to dismiss are motions for summary judgment.

3. The Notice of Appointment of Interim Trustee provides as follows:

  1. Harriet E. Styler, a panel trustee in the State of Utah is hereby appointed interim trustee in the following cases:

  Peterson Distributing, Inc.    91–04224

  2. The blanket bond previously filed by the trustee is hereby approved.

  3. The trustee shall be deemed to have accepted the appointment in the above cases unless the trustee notifies the Court in writing of rejection within five (5) days after receipt of this notice.

  4. The interim trustee appointed herein shall serve as trustee without further appointment unless another trustee is elected at the 11 U.S.C. 341 meeting of creditors.

  Dated: July 16, 1992                    Signed:
                                          Assistant United States Trustee

The Notice of Appointment of Interim Trustee is consistent with the provisions of § 322 that a trustee appointed pursuant to § 701 or 702 must qualify to serve by, within five days after such selection and before beginning any official duties, filing with the court a bond in favor of the United States.

4. § 702. **Election of trustee.**

  . . . .

  (d) If a trustee is not elected under this section, then the interim trustee shall serve as trustee in the case.

interim trustee terminated as required by § 701(b).[5]

On August 16, 1994, Styler filed these three complaints, and others, seeking to avoid transfers pursuant to § 547. The complaints named Conoco, Inc. (Conoco), Pennzoil Products Company (Pennzoil) and Jardine Petroleum Co. (Jardine) as defendants (collectively the Defendants). Each complaint is similar with respect to the issue of whether the complaint is time barred.

Conoco, Pennzoil and Jardine each filed motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and Fed.R.Bankr.P. 7012(b) (Motions), upon the grounds that the avoidance actions were commenced after the expiration of the statute of limitations contained in § 546(a)(1). The Defendants argue three alternative interpretations of § 546(a)(1), all of which mandate that the avoidance actions are time barred. First, they assert that the § 546(a)(1) two-year statute of limitations began to run on June 28, 1991, when Peterson filed the chapter 11 petition as a debtor in possession. The second alternative is that the two-year statute of limitations began to run on July 16, 1992, when Styler was appointed interim trustee. The third alternative is that the two-year statute of limitations began to run on July 26, 1992, when the order was entered employing Styler's counsel to pursue avoidance actions.

Styler asserts the complaints are timely filed and the Court should deny the Motions. She argues this Court should rely upon the plain language of § 546(a)(1) to determine that the limitations period began to run from August 17, 1992, the date of her appointment as permanent trustee.

## THIS COURT IS BOUND TO APPLY THE PLAIN LANGUAGE OF § 546(a)(1)

The Defendants' argument that Styler filed these proceedings out of time is a continuum of a national debate regarding the interpretation of § 546(a)(1). The dispute turns on the construction of § 546(a), and, in part, whether to apply the plain language of the statute, or whether the statute is ambiguous and must be construed.

■ This Court should apply the plain language of the statute if "the statutory scheme is coherent and consistent." *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 240–41, 109 S.Ct. 1026, 1030 (1989). As stated in *Maurice Sporting Goods, Inc. v. Maxway Corp. (In re Maxway Corp.),* 27 F.3d 980, (4th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 580, 130 L.Ed.2d 495 (1994):

[C]ourts should venture beyond the plain meaning of the statute only in those rare instances in which there is a clearly expressed legislative intent to the contrary, *Russello v. United States,* 464 U.S. 16, 20, 104 S.Ct. 296, 298–99, 78 L.Ed.2d 17 (1983), in which a literal application of the statute would thwart its obvious purpose, *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982), or in which a literal application of the statute would produce an absurd result, *United States v. American Trucking Ass'ns,* 310 U.S. 534, 543, 60 S.Ct. 1059, 1063–64, 84 L.Ed. 1345 (1940).

*Maxway Corp.,* 27 F.3d at 982–83.

The language of the statute at issues is as follows:

§ 546. **Limitation on avoiding powers.**

(a) An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—

(1) two years after the appointment of a trustee under section 702, 1104, 1163, 1302, or 1202 of this title; or

(2) the time the case is closed or dismissed.

The variation of facts in a specific case appears to drive each court's interpretation of § 546(a), and the rationale applied often differs between bankruptcy and circuit courts. In some instances the issue arises in a case with only a chapter 11 debtor in possession. In others, the case may have

---

5. § 701. **Interim trustee.**

. . . .

(b) The service of an interim trustee under this section terminates when a trustee elected or designated under section 702 of this title to serve as trustee in the case qualifies under section 322 of this title.

combinations of trustees appointed under the various sections set forth in § 546(a)(1). Because of the increased incidence of "chapter surfing," that is, debtors who travel from one chapter to another (and often back again), some cases have complex facts that confuse a clear application of the statute.

In chapter 11 cases, the majority of bankruptcy and district courts have concluded that the two-year statute of limitations does not begin to run until the appointment of one of the trustees specified in § 546(a)(1). However, five circuits have now addressed the application of § 546(a)(1) to a chapter 11 case in which no trustee is ever appointed. Four circuits have concluded that the statute is ambiguous, must be construed and have relied on legislative history. For policy reasons, they conclude the statute of limitations begins to run from the date of the order of relief, and that § 546(a)(1) applies to a debtor in possession as well as a trustee appointed under any of the sections specified in § 546(a)(1). *Zilkha Energy Co. v. Leighton,* 920 F.2d 1520 (10th Cir.1990);[6] *see also U.S. Brass & Copper Co. v. Caplan (In re Century Brass Prods., Inc.),* 22 F.3d 37, 40 (2nd Cir.1994) (for the DIP, the limitations period begins when the debtor files its petition and becomes a DIP under § 1101); *Construction Mgt. Servs., Inc. v. Manufacturers Hanover Trust Co. (In re Costal Group Inc.),* 13 F.3d 81, 85 (3rd Cir.1994) (§ 546(a)(1) applies to a debtor in possession in a case where no trustee has been appointed); *Upgrade Corp. v. Government Tech. Servs., Inc. (In re Softwaire Centre Int'l, Inc.),* 994 F.2d 682, 682–83 (9th Cir.1993) (§ 546(a), when read in light of § 1107(a), was intended to apply to

debtors in possession as well as trustees where the case had not been closed and no trustee had been appointed). The 4th Circuit has taken the opposite position and adopted a plain language interpretation of § 546(a)(1) finding no reason to construe the statute. *In re Maxway,* 27 F.3d. at 984–85 (§ 547 action brought by creditors' committee in confirmed liquidating chapter 11 plan timely because plain language of statute of limitations does not begin to run upon the "appointment" of a debtor in possession).

In circumstances where two trustees have been appointed under the subsections enumerated in § 546(a)(1), usually one under § 1104 and one under § 702, the cases are also divided. Some courts consider § 546(a)(1) to be ambiguous because the "or," read in conjunction with § 102(5) ("or" is not exclusive), may allow a two-year limitations period for *each* appointed trustee. *See Hovis v. United Screen Printers, Inc. (In re Elkay Industries Inc.),* 167 B.R. 404 (Bankr. D.S.C.1994) (a thoughtful analysis of the current case law, but adopting the majority position articulated in *Stuart v. Pingree (In re Afco Dev. Corp.),* 65 B.R. 781 (Bankr.D.Utah 1986)).

Other courts find § 546(a)(1) to be clear on its face and employ a "plain language" reading of the statute. This District Court's ruling in *Gillman v. Mark Oakes Trucking (In re CVA Assocs.),* 171 B.R. 122 (D.Utah 1994), rejects the position of *Afco Dev. Corp.* and adopts a plain language interpretation of § 546. *Mark Oakes,* a "chapter surfing"

---

**6.** In *Zilkha,* which is controlling upon this Court, the 10th Circuit was faced with what appeared to it to be an untenable circumstance: the Code provided no statute of limitations on trustee avoiding powers for an open chapter 11 case with a debtor in possession, although the case and claims for relief had been in existence for years. The 10th Circuit found that a chapter 11 debtor in possession is equivalent to a trustee for purposes of § 544(a)(1). It extended that analysis to resolve whether a debtor in possession is subject to the same two-year statute of limitations as an appointed trustee. In a case where no trustee was appointed under § 1104 (therefore § 546(a)(1) was inapplicable) and the case had not been closed or dismissed (therefor § 546(a)(2) was inapplicable), the 10th Circuit

found § 546 to be ambiguous. The 10th Circuit then determined that Congress did not intend "to limit actions filed by an appointed trustee to two years without making the same restriction apply to a debtor in possession who is the functional equivalent of an appointed trustee." *Zilkha,* 920 F.2d at 1524. It therefore construed § 546(a)(1) to apply to actions filed by a debtor in possession, and set the date of filing the chapter 11 petition as the beginning date. To rule otherwise, the Court found, would "deprive § 546 of significance in the majority of recovery actions filed in chapter 11 cases." *Zilkha,* 920 F.2d at 1524. The 10th Circuit specifically declined to take a position on whether the subsequent appointment of a trustee in a chapter 11 case would change the analysis.

case,[7] had the same trustee appointed as permanent chapter 7 trustee twice. *Mark Oakes* states:

[a]lthough a trustee may be appointed under a variety of different Code sections, § 546(a) plainly states that once any trustee has been appointed, the two year limitations period begins to run. Because § 546(a) is susceptible of plain interpretation, it is unnecessary to venture into legislative history or policy debates in search of congressional intent. (citations omitted)

*Mark Oakes*, 171 B.R. at 127. The District Court then dismissed the chapter 7 trustee's § 547 action as time barred, citing with favor *Ford v. Union Bank (In re San Joaquin Roast Beef)*, 7 F.3d 1413 (9th Cir.1993) (plain reading of § 546(a) is that the two-year statute of limitations begins running from the date a chapter 11 trustee, the first trustee, was appointed [pursuant to § 1104] and that all subsequent trustees are subject to the same two-year statute of limitations).

In *Mark Oakes*, the Court also reviewed legislative history and public policy. Contrary to the determination in *Afco Dev. Corp.* that in enacting § 546 Congress did not intend to create a new statute of limitations, *Mark Oakes* found that Congress was adding to, rather than codifying, pre-Code bankruptcy law. *Mark Oakes* then found the protection of creditors from stale claims to be a more compelling public policy argument than the potential that a chapter 7 trustee's ability to maximize the debtor's estate would be undermined.[8] As a result, the Court held that § 546(a) imposed a two-year statute of limitations on actions beginning when the first permanent trustee was appointed.

The Defendants argue that *Zilkha* and *Mark Oakes*, read collectively, require this Court to find that the limitation period began to run on the date Peterson filed its chapter 11 petition. They argue this date is applicable because Peterson, as a debtor in possession, was the first trustee appointed in the

case, even though Styler was subsequently appointed under § 702. This Court rejects that interpretation of § 546(a)(1). It requires a collective reading of *Zilkha* and *Mark Oakes* that would result in an interpretation of the statute not set forth in either opinion, and one that is contrary to the plain language of the statute as applied to the facts of this case.

■ To eliminate the confusion that the Defendants attempt to read into the case law, this Court need only review the facts presented here and apply those facts to § 546. If the facts are covered by the statute, the resulting literal interpretation of the statute does not thwart its purpose and no absurd result is produced, this Court should adopt a plain meaning interpretation of § 546(a)(1). If the facts are not covered by § 546, and any resulting application would produce a result contrary to expressed legislative intent, this Court should conclude that the statute is ambiguous and rely upon legislative history to resolve the issue.

■ In this case, the facts easily fit within the framework of the statute. The first trustee to be appointed under one of the specified statutory provisions was Styler on August 17, 1992. To so find does not thwart the statute's purpose to propose a fixed, clearly defined statute of limitations to protect creditors from stale claims. It does not produce an absurd result. Neither does it require a contrived interpretation that Peterson, as a debtor in possession, was a "permanent trustee" "appointed" under any of the statutory sections enumerated in § 546(a)(1). *Mark Oakes*, 171 B.R. at 127. It does not require this Court to read *Mark Oakes* to say that a debtor in possession is the "first permanent trustee ... appointed" when a chapter 7 trustee is subsequently appointed under § 702. *See also Gillman v. Swire Pacific Holdings, Inc. (In re D–Mart Services, Inc.)*, 138 B.R. 985 (Bankr.D.Utah 1992) (in a chap-

---

7. An involuntary petition was filed against the debtor in January of 1990, with a chapter 7 trustee permanently appointed in March of 1990. In July of the same year the case was converted to a chapter 11, with reconversion to chapter 7 in May of 1991, and reappointment of the chapter 7 trustee on July 8, 1991.

8. While this Court may disagree with the public policy analysis in *Mark Oakes*, it makes little difference since this Court adopts a plain language view of the statute, eliminating the necessity to determine legislative intent.

ter 11 case converted to chapter 7, *Zilkha* would not be construed to limit the ability of a chapter 7 trustee to commence avoidance actions two years after his appointment). Such an interpretation also eliminates the necessity to construe the statute of limitations period as "renewed" upon conversion. It simply began to run upon the first appointment of a trustee specified in § 546(a)(1). *Biggs v. Biljo, Inc. (In re Goetz)*, 175 B.R. 743 (Bankr.C.D.Cal.1994); *England v. Nestle Food Co. (In re California Canners & Growers)*, 172 B.R. 941 (N.D.Cal.1994).

It is only when no trustee is appointed under the specific sections of § 546(a)(1), or where there are multiple appointments, that the statute may be ambiguous. In providing for that circumstance, some courts have held that the statute implies two statutes of limitation. This interpretation of § 546(a)(1) is reflected in *Liebersohn v. Rental Tools/Equipment (In re Nelson Co.)*, 167 B.R. 1018, 1023 (Bankr.E.D.Pa.1994). After reviewing the applicable case law, (including *Costal Group Inc.* which is similar to *Zilkha*), the Court indicated that there are two distinct periods of limitation:

> [O]ne is commenced with the initiation of the Chapter 11 case and flows from the limitations placed upon a debtor-in-possession under § 1107. The other is commenced upon the appointment of the first trustee under any of the sections referenced in § 546(a). This view we believe is compelled by the Third Circuit Court of Appeals' rationale for holding the debtor-in-possession subject to the limitations period.

*Nelson Co.*, 167 B.R. at 1023, (distinguishing *Dumas v. Research Testing Lab, Inc. (In re EPI Products USA, Inc.)*, 162 B.R. 1 (Bankr. C.D.Cal.1993)).[9]

Similarly, the ambiguity *Zilkha* found in the statute when a debtor in possession remains in control, is comfortably reconciled with the plain language interpretation in *Mark Oakes* that starts the running of the statute of limitations on the date the first trustee is appointed under any of the sections referenced in § 546(a)(1). Once a trustee is appointed under any of the sections specified in § 546(a)(1), any ambiguity ceases and the statute's plain language can be applied.

## THE STATUTE OF LIMITATIONS BEGAN TO RUN UPON THE TRUSTEE'S PERMANENT APPOINTMENT

■ The next argument raised by the Defendants is that Styler was not appointed, for the purposes of § 546(a)(1), at the § 341 meeting of creditors. Instead, the Defendants argue the date of appointment was prior thereto at the time the United States trustee issued its Notice of Appointment of Interim Trustee.[10] They assert that July 16, 1992, must be the applicable date because the Notice of Appointment of Interim Trustee serves as the only dated document appointing Styler, and it is self operating if no election is held pursuant to § 702(b).

The Defendants place too much reliance upon the language of the United States trustee's administrative notice. This Court should not conclude that a document not even of record in the Court's file and not generally available to parties in interest, sets a date that commences the running of the statute of limitations that is different from the date set by the clear language of the statute.

The issue is resolved to the contrary by an unpublished District Court ruling in this jurisdiction. *Rushton v. Holy Land Christian Mission (In re Jensen)*, Civil No. 89–C–688J, slip op. (D.Utah Nov. 7, 1989) (plain language of § 546(a)(1) dictates that statute of limitations begins to run from the date of the trustee's actual permanent appointment at the first meeting of creditors, and that, prior thereto, interim trustee could be expected to do little more than protect the assets of the

9. This logic would also distinguish *Clark Oil & Trading Co. v. Haberbush (In re Sahuaro Petroleum & Asphalt Co.)*, 170 B.R. 689 (C.D.Cal.1994) and *Schwartz v. Kursman (In re Harry Levin, Inc.)*, 175 B.R. 560 (Bankr.E.D.Pa.1994) that rely upon *EPI Products USA.*

10. The Defendants also argue the date of appointment of Styler's counsel could be an appropriate date from which the statute of limitations would run. There is no statutory support in § 546(a)(1) for that position and the arguments in favor thereof are unpersuasive.

estate and insure continuity of administration of the estate); citing with favor *In re Metro Shipper, Inc.,* 95 B.R. 366, 369–70 (Bankr. E.D.Pa.1989) (statute of limitations begins to run only when an election dispute is finally resolved and the trustee is given permanent authority to act), and *In re Conco Building Supplies, Inc.,* 102 B.R. 190 (9th Cir. BAP 1989) (statute of limitations should not begin to run until the trustee has had the opportunity to examine the debtor). *See also Maxway Corp.,* 27 F.3d at 984, (the two-year limitations period for filing an avoidance action does not begin to run until a permanent trustee is selected pursuant to § 702).[11]

### BANKRUPTCY REFORM ACT OF 1994

The Defendants finally direct the Court to the recent modifications contained in the Bankruptcy Reform Act of 1994 as guidance for resolution of the pending issue. While all parties acknowledge that the Bankruptcy Reform Act of 1994 is inapplicable to this case, the modifications are of interest from an academic viewpoint. Congress has now attempted to clarify the statute by creating a limitations period similar to that described in *Nelson Co.* It has fixed a limitations period where no trustee is appointed, such as when a chapter 11 debtor remains in possession. It has also set an additional limitations period when a permanent trustee is appointed under the specific sections of the statute. Section 216 of the Bankruptcy Reform Act of 1994 amends § 546 to read as follows:

(a) An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—

(1) the later of—

(A) 2 years after the entry of the order for relief; or

(B) 1 year after the appointment or election of the first trustee under sec-

tion 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or

(2) the time the case is closed or dismissed.

H.R. 5116, 103rd Cong., 2nd Session (1994).

The Bankruptcy Reform Act of 1994 also clarifies that the limitations period does not run from the appointment of an interim trustee. There is no added reference to § 701. *But see Goetz,* 175 B.R. at 746, fn. 1 (where two-year limitations period runs during the period between conversion and appointment of a permanent trustee, legislative desire to give independent trustee a year to pursue actions will be frustrated).

The only modification applicable to this case is the alteration of the statute of limitations to one year if the appointment under the specific sections of § 546(a)(1) occurs before the expiration of the two-year period that commenced upon the entry of the order for relief. Thus, if Peterson had filed this case under the Bankruptcy Reform Act of 1994, Styler would have had only one year from her permanent appointment to commence these actions. The creation of two periods that has the effect, in this case, of reducing the limitations period is a policy consideration appropriate to Congress, and should not be used by this Court to bootstrap an argument that modifies the plain language of § 546(a)(1) that is applicable to this case.

### CONCLUSION

Where the facts of a case fall squarely within the express language of § 546(a), and the literal interpretation of the statute as applied to the facts would not produce an absurd result inconsistent with the legislative intent, there is no need to construe the stat-

---

**11.** The Defendants cite *Clark Oil & Trading Co. v. Haberbush (In re Sahuaro Petroleum & Asphalt Co.),* 170 B.R. 689 (C.D.Cal.1994) as support for their argument that the date of the interim appointment, not the permanent appointment, is controlling. In *Sahuaro* the District Court found that, in spite of § 546(a)(1)'s reference to § 702 (not § 701) *San Joaquin Roast Beef* and *Softwaire Centre* were controlling over *Conco Building Supplies* such that the § 701 appointment, and not

the § 702 appointment, began the running of the statute. The interpretation was based upon the logic that an interim trustee was empowered to assert claims governed by § 546(a)(1). Since neither *San Joaquin Roast Beef* nor *Softwaire Centre* dealt with grafting § 701 onto § 702 as used in § 546(a)(1), *Sahuaro Petroleum's* extension of the statute is not persuasive in light of the plain language of § 546(a)(1).

ute: it need only be applied. Therefore, the § 546(a) two-year statute of limitations began to run upon the appointment, under any of the specific sections referenced in § 546(a)(1), of the first permanent trustee. That permanent trustee was Styler when she was appointed as chapter 7 trustee pursuant to § 702.

Based upon the foregoing rationale, it is hereby

**ORDERED,** that the Motions to Dismiss based upon the untimeliness of the complaints, filed by Conoco, Pennzoil and Jardine (treated herein as Motions for Summary Judgment) are denied.